# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LORI MCDOWELL, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CGI GROUP, INC., CGI FEDERAL, INC., and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of District of Columbia's Unfair Trade Practices Act (D.C. Code § 28-3901, *et seq*);<br><br>2. Violation of District of Columbia's Notification of Security Breach Act (D.C. Code § 28-3852);<br><br>3. Negligence<br><br>4. Breach of Contract, Including Third-Party Beneficiary Contracts<br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Lori McDowell ("Plaintiff") brings this action against Defendants CGI Group, INC. ("CGI"), and CGI Federal, Inc. ("CGI Federal"), (collectively referred to as "Defendants") by and through her attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff on behalf of herself, and all others similarly situated, as an identity theft victim who was victimized when Defendants facilitated the theft by their own employees of the personal data, upon information and belief, of at least 1,000 individuals, submitted as part of their applications to obtain US passports.  In doing so, Defendants allowed cybercriminals and fraudsters to obtain the personal information and data maintained by Defendants in order to open up private lines of credit and/or to purchase cellular telephones and computers.   As a

result of Defendants' conduct, Plaintiff and Class members have suffered and will continue to suffer

actual damages and pecuniary losses, including costs associated with mitigating the risk of identity theft,

such as costs for credit monitoring services and identity theft insurance, and costs associated with

freezing and unfreezing their accounts.

2.      This action arises from Defendants' failure, despite their knowledge of the sudden

increase in massive data breaches in recent years, to take commercially reasonable measures to protect

identity theft victims by preventing theft of personal data information by their own employees.

3.      On information and belief, Plaintiff alleges that Defendants facilitated this identity theft

by failing to take necessary precautions in safeguarding passport applicants' most personal and sensitive

information.  Plaintiff alleges that Defendants' negligent hiring of employees facilitated the theft of at

least 1,000 individuals' private information.  Further, Plaintiff and the proposed Class reasonably

expected that Defendants would implement the security measures necessary to safeguard its customers'

most personal and sensitive information from theft and fraud.

4.      Defendants CGI and CGI Federal are entrusted to build and manage solutions for

government and industry's most complex fundamental operations, including supporting production of all

13 million US passports issued each year.

5.      Based upon information and belief, Defendants have a significant contract with the US

Department of State to provide subcontractor work for passport applications and processing.

6.      Defendants' passport processing teams are a part of a large US passport and visa practice

that handles inquiries, applications, and passport deliveries.  Internationally, the practice also provides

assistance to US passport applications in 62 countries.

7.      In their role of supporting production and processing millions of US passports issued

each year, Defendants' employees are required to obtain US citizens' most sensitive and personal

2

information to enter into the database of Defendants' computer operating systems -- TDIS-PD and PRISM.

8.      Based on information and belief, Defendants utilization of their computer operating systems includes document preparation, creation of document batches, document imaging (scanning) and reviewing, retrieval of individual application information, data entry, book printing, quality control, generation of mailing labels, and verification of information received through the National Passport Information Center ("NPIC").

9.      Based on information and belief, Defendants' passport processing employees are required to adhere to the federal Privacy Act and passport laws and ensure there are fraud detection procedures in place.  Moreover, the Application for a US Passport, Form DS-11, notifies the applicant through the Privacy Act Statement that the information provided is for "routine uses" including, but not limited to, "activities that meet the Secretary of State's responsibility to protect US citizens and non-citizen nationals abroad."

10.      Businesses such as Defendants, which provide services online or through software that actively engage in collecting and storing personal data about customers have an affirmative duty to safeguard that information.  In doing so, such businesses must be able to ensure their customers that their personal data is, and will remain, secure and private.  When corporations, such as Defendants, keep and store highly private and sensitive information and data such as social security numbers, birth dates, residential addresses, email addresses, account numbers, and other personal information belonging to their customers, this duty becomes even more important.  Defendants recognize this obligation and, as a result of the nature of this government contract, require their employees to successfully pass a CGI Background Check and also to obtain a US government security clearance in order to start employment.

11.     The data collected and stored by Defendants' software and websites is among the most highly sensitive and personal information a person has to his or her name.  When global information technology (IT) consulting, systems integration, and outsourcing companies such as Defendants avail themselves to a type of business that requires customers to entrust their most sensitive personal information, such companies in turn, have a duty to protect such sensitive data from compromise, theft, and fraud.  On CGI Federal's website, Defendants list as one of their capabilities "Federal identity management" which means "Enabling the right people to have the right access to the right facilities, systems and data."  (See http://www.cgi.com/en/us-federal/federal-identity-management, last visited 6/24/2015.)  Defendants further claim to deliver "high trusted security credential processing solutions (developed for the U.S. Department of Defense and U.S. Department of State Bureau of Consular Affairs) to guard against the security threat."  (*Id.*)

12.     Moreover, Defendants list as experience and expertise of CGI Federal the business of providing process services "supporting the U.S. Department of State Bureau of Consular Affairs for passport processing" which "span secure, repeatable processing of sensitive passport applications servicing U.S. Citizens resulting in the creation of more than 300 million trusted identifying credentials."  (*Id.*)

13.     As a result of the US government's contract with Defendants, applicants for employment positions within Defendants' passport practice are required to establish "United States Citizenship and the ability to obtain a government secret level clearance."  The data collected and gathered at Defendants' passport processing facilities is personal and therefore highly susceptible to data breaches.

14.     In addition, businesses such as Defendants must be diligent in recognizing fraud and abuse, reporting it to the US Department of State, and others, and preventing the fraud by undertaking reasonable activities and safeguards that will prevent fraudulent theft of personal information necessarily

provided when obtaining a US passport.  As such, Defendants owe a duty to passport applicants who will be foreseeably damaged should these safeguards not be imposed.  In light of the recent incidents of data theft, this duty has become even more paramount and critical.

15.     The likelihood of a data breach is no longer an unknown or remote possibility (Experian, *2014 Data Breach Industry Forecast*).  Therefore, Defendants are responsible for carefully vetting and monitoring employees that have access to its customers' most personal and sensitive information in order to prevent theft and fraud of such data.

16.     As such, Plaintiff on behalf of herself and others similarly situated alleges that through their conduct Defendants violated District of Columbia's Unfair Trade Practices Act and District of Columbia's Notification of Security Breach Act.  Additionally, Plaintiff asserts causes of action for negligence and breach of contract, including third-party beneficiary breach of contract.  In bringing this class action, Plaintiff and the proposed Class seek damages, declaratory relief, restitution, injunctive relief, and any other relief the Court may find just under the circumstances.

## JURISDICTION

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this judicial district because Defendants' conduct arises from contracts with its customer, the United States, that provide that the exclusive jurisdiction and venue for federal court actions is in the District of Columbia.  Further, pursuant to 28 U.S.C. § 1391, Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to

be citizens of this district.  Upon information and belief, a substantial part of the events and/or omissions and/or contracting for the passport services between Defendants and the United States took place within this district.  Moreover, Plaintiff and the Class Members provided their information to the US Department of State Bureau of Consular Affairs for passport application and processing.

19.     This court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed their computer operating systems into the stream of commerce within the District of Columbia and throughout the United States.

## PARTIES

20.     Plaintiff Lori McDowell is a resident and citizen of Carrolton, Georgia.

21.     Defendant CGI Group, Inc. is a Canadian corporation with US headquarters located at 12601 Fair Lakes Circle, Suite 500, Fairfax, Virginia.

22.     Defendant CGI Federal, Inc., is a Delaware corporation with its principal place of business located at 12601 Fair Lakes Circle, Suite 500, Fairfax, Virginia.

23.     The true names and capacities of the defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such defendants by such fictitious names.  Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend this complaint to reflect the true names and capacities of the defendants designated herein as DOES when such identities become known.

24.     Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with

the full knowledge, permission, and consent of each of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

**A.**     **Background on Defendants CGI and CGI Federal**

25.     CGI is a global information technology (IT) consulting, systems integration, outsourcing, and solutions company headquartered in Montreal, Quebec.  CGI went public in 1986 with a primary listing on the Toronto Stock Exchange.

26.     Founded in 1976, CGI is the fifth largest independent information technology and business process services firm in the world.  Approximately 69,000 professionals serve thousands of global clients from offices and delivery centers across the Americas, Europe, and Asia Pacific, leveraging a comprehensive portfolio of services including high-end business and IT consulting, systems integration, application development and maintenance, infrastructure management as well as a wide range of proprietary solutions.  With annualized revenue in excess of (Canadian) $10 billion and an order backlog exceeding (Canadian) $18 billion, CGI shares are listed on the TSX (GIB.A) and the NYSE (GIB).

27.     Among other significant purchases, CGI purchased American Management Systems ("AMS") for $858 million in 2004 which grew CGI's presence in the United States and led to the formation of the CGI Federal division.

28.     CGI Federal is a wholly-owned US operating subsidiary of CGI, dedicated to partnering with federal agencies to provide solutions for defense, civilian, and intelligence missions.

29.     According to George Schindler, president of CGI Federal, CGI Federal "was created as a wholly owned US Operating subsidiary of CGI in order to allow the company to more effectively sell to

the federal market and pursue work that requires security clearances."  (*See* ExecutiveBiz:  George

Schindler, president of CGI Federal, at http://blog.executivebiz.com/2008/06/george-schindler-

president-of-cgi-federal-talks-trends-facing-federal-contractors/).

30.     CGI Federal's 2010 acquisition of Stanley Associates, Inc. ("Stanley"), for $1.07 billion

almost doubled CGI's presence in the United States, and expanded CGI into defense and intelligence

contracts.  Stanley holds contracts with the US Department of State, Bureau of Consular

Affairs/Passport Services Directorate, and operates facilities for the production of US passports and

mailroom work and data entry for applications for US visa and citizenship.  Stanley is a wholly-owned

subsidiary of CGI Federal.

**B.     The Passport Production Facilities**

31.     Upon information and belief, Plaintiff alleges that Defendants passport processing

facilities are a part of a large US passport and visa practice that processes 14 million US passport

applications each year, handling inquiries, applications, and passport delivery.  Internationally, the

practice also provides assistance to US passport applications in 62 countries.

32.     Persons wishing to apply for a US passport do not have a choice in passport facilities;

making Plaintiff's and the proposed Class members' bargaining position almost non-existent.

33.     The passport application requires the following information:  name, date of birth, city of

birth, state of birth, country of birth, social security number, sex, height, hair color, eye color,

occupation, and evidence of US Citizenship, such as a previously issued US Passport, or US birth

certificate.  Applicants must also submit present identification such as a fully valid driver's license or

military ID.  All of this information is collectively referred to as "personally identifiable information" or

"PII."

34.     In processing the information provided in the passport application, Defendants, via the US Department of State, Bureau of Consular Affairs' requirements, acquire a substantial amount of information about the applicant, as enumerated in the prior paragraph.  This information is typically stored on Defendants' computer systems and transmitted to the US government.

35.     As a result of the US government's contract with Defendants, applicants for employment positions within Defendants' passport practice require to establish "United States Citizenship and the ability to obtain a government secret level clearance."  The data collected and gathered at Defendants' passport processing facilities is personal and therefore highly susceptible to data breaches.

36.     Defendants are, and at all relevant times have been, aware that the information they maintain about passport applicants is highly sensitive and could be used for nefarious purposes by employees and third parties, such a perpetuating identity theft and making fraudulent purchases.

37.     Defendants also are, and at all relevant times have been, aware of the importance of safeguarding their applicants' information and of the foreseeable consequences that would occur if its security systems were breached, specifically including the significant costs that would be imposed on its applicants.

38.     Indeed, CGI is well aware of the dangers of data breaches because, as part of other services offered, it has at least ten security operating centers (unrelated to the provision of passport services) which feed one of the company's fastest-growing businesses -- cyber security.  In fact, CGI monitors data traffic for an undisclosed number of customers.  CGI's centers are staffed around the clock by 1,400 employees, looking for suspicious activity on behalf of their clients.   Despite such experience and expertise in monitoring other companies for suspicious activities, Defendants failed to take adequate precautions to safeguard their own passport data.

39.     Defendants owed a duty of care to Plaintiff and Class members because they were foreseeable and probably victims of any inadequate data security practices.  It was foreseeable that if Defendants did not take reasonably security measures, the PII of Plaintiff and the Class members would be stolen.  Defendants knew or should have known that passport applicants' data was an attractive target for cyber attackers and theft by employees, particularly in light of the fact that a portion of Defendants' business is cyber security.

## C.     The Age of Massive Data Breaches

40.     Defendants' failure to take the necessary steps to safeguard their customers' extremely sensitive personal data is even more troublesome in light of the recent surge in massive data breaches experienced by large corporations such as Home Depot, Chase Bank, Target, Sony, Premera Blue Cross, and Anthem Blue Cross.  As the result of these massive data breaches, companies such as Defendants should have known that their customers' personal data were at an even greater risk of being stolen and used for fraudulent purposes by their own employees and/or by cybercriminals.

41.     Over the past year alone, millions of people have fallen prey to identity theft through massive data breaches at some of the nation's largest companies.  The following are examples of the largest data breaches in recent times:

> a.      In September 2014, Home Depot, the world's largest home improvement chain, confirmed that a total of 56 million credit and debit cards were affected by a data breach.

> b.      In June and July 2014, JP Morgan Chase, the nation's largest bank by assets, confirmed that it had experienced a massive data breach that affected 76 million households and 7 million small businesses.

c.      In early December 2014, Sony's system was hacked, resulting in the theft of 47,000 social security numbers, which subsequently appeared more than 1.1 million times on 601 publicly-posted files stolen by hackers.

d.      In January 2014, it was revealed that Target Corporation's holiday data breach affected up to 70 million people, who had their names, mailing addresses, phone numbers, and email addresses stolen by hackers.

e.      In January 2015, it was revealed that health insurance giant Premera Blue Cross experienced a data breach involving the personal data of approximately 80 million members across the country.

f.      In February 2015, Anthem, Inc., the country's second largest health insurer, announced that its systems had been compromised in a massive data breach, in which a total of 78.8 million records were stolen, including 8.8 to 18.8 million records of non-customers.

42.     Yet in light of the increase in massive data breaches in recent times, coupled with the fact that Defendants, as one of their services, equip governments and companies to safeguard against such data theft threats, Defendants negligently failed to implement stricter internal security measures.  Based on information and belief, Plaintiff alleges that Defendants' failure to implement such measures allowed their own employees easier access to customers' personal data, which, based on information and belief, has resulted in the theft of PII of at least 1,000 customers.

**D.      The Data Breach**

43.     Beginning on or about the year 2010 until on or about March 2, 2015, certain employees of Defendants did knowingly combine, conspire, confederate and agree with others known and unknown to Plaintiff and the proposed Class to devise a scheme to defraud and obtain money and property by

means of obtaining stolen PII of others, including Plaintiff and the proposed Class members, from the US Department of State, via Defendants' computer systems.

44.     Defendants' employees were permitted to obtain the said PII and transmitted the stolen PII to and from each other and used the PII to create counterfeit identification documents.  Defendants' employees also recruited accomplices to assume the stolen identities and use the counterfeit documents to obtain commercial lines of credit and to purchase iPhones, iPads, and other electronic merchandise. The PII of Plaintiff and the Class members is still compromised, vulnerable and remains at risk of continued and further harm.  As a result of Defendants' conduct, Plaintiff and the Class members have suffered and will continue to suffer actual damages and pecuniary losses, including costs associated with mitigating the risk of further, future risk of identity theft.

45.     The PII theft by Defendants' employees has given rise to a federal investigation by the United States Attorney for the Southern District of Texas, to determine the extent of the fraud and how it was perpetrated.

E.     **Plaintiff's and the Class Members' Damages**

46.     Due to Defendants' failure to safeguard Plaintiff's and the Class members' privacy rights, Plaintiff and Class members have suffered and will continue to suffer damages, including actual damages, pecuniary losses, and have suffered or are at increased risk of suffering from:

    a.   the life-long loss of opportunity to control how their PII is used;

    b.   the diminution in value and/or use of their PII entrusted to Defendants/US Department of State for the purpose of deriving a passport from the US government with the understanding that the US government and its contractors would safeguard their PII against theft and not allow access and misuse of the PII by others;

    c.   the compromise, publication, and/or theft of their PII;

d.  out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial information;

e.  lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including by not limited to efforts spent researching how to prevent, detect, contest and recover from identity data misuse;

f.  costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete denial and/or increased costs to use credit, credit scores, credit reports, and assets;

g.  unauthorized use of compromised PII to open new financial accounts;

h.  the continued risk to their PII, which remains in the Defendants' and US Department of State's possession and is subject to further breaches so long as Defendants and the US Department of State fail to undertake appropriate and adequate measures to protect the PII in their possession;

i.  current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Defendants' breach for the remainder of the lives of the Plaintiff and the Class members.

## THIS CLASS ACTION

47.     In light of the above, this action arises from Defendants' failure to take commercially reasonable measures in protecting its customers' sensitive personal and financial data.  As leaders in the IT and business process services, assisting millions of US citizens in processing and obtaining their passports, Defendants are in the business of maintaining their customers' most private of information. Accordingly, Defendants have an affirmative duty to take all reasonable measures in protecting

customers' data and safeguarding it from their own employees as well as from third-party
cybercriminals.

48.     Plaintiff alleges that Defendants failed to fulfill their legal duty to protect their
customers' sensitive personal and financial information by allowing internal employee identity thieves
to illegally obtain the PII data of the Plaintiff and the proposed Class members, as maintained by
Defendants.

49.     On information and belief, Plaintiff alleges that Defendants facilitated this internal fraud
by failing to implement and then take necessary and adequate security precautions to safeguard their
data and data security infrastructure, and to detect and prevent identity compromise for customers'
personal and sensitive information.  Plaintiff alleges that Defendants' negligent mishandling of PII
facilitated the theft of PII by Defendants' own employees from Defendants' own computer systems.

50.     On information and belief, Plaintiff alleges that Defendants knew or should have known
that their employees were routinely utilizing Defendants' software and data to obtain PII of their
customers.

51.     Additionally, Plaintiffs allege that Defendants have failed to notify customers as to the
fact that their personal information, as maintained by Defendants, have been used to obtain commercial
lines of credit.

52.     The recent history of cyber security and data breaches and warnings that are now
ubiquitous as to the threat posed by data breaches have placed companies that maintain customers'
personal and financial data on notice of their duty to safeguard such data from cybercriminals and
unauthorized individuals.  Defendants, as the industry leaders in IT and business process services,
should have been among the first companies to implement robust internal and cyber and data security
measures that meet the extraordinarily high standard of a company that promises the highest level of

security, but fails to deliver.   Certainly that is what Defendants' customers expect of the companies that provide the passport processing services for the federal government and the computer operating systems into which they input their personal information in applying for US passports.

53.     This expectation is supported by the fact that CGI claims that it has at least ten security operating centers which feed one of the company's fastest-growing businesses, cyber security.  CGI claims its centers are staffed around the clock by 1,400 employees, looking for suspicious activity on behalf of their clients.

54.     Unfortunately, Defendants' own cyber and data security expertise was not utilized and, instead, Defendants failed to protect consumers' data from foreseeable and preventable breaches. Rather than protecting customers' personal and financial information by implementing stricter security measures, Defendants knowingly facilitated identity theft fraud by allowing their own employees easy access to their customers' most private information.

## PLAINTIFF LORI MCDOWELL'S EXPERIENCE

55.     On or about July 31, 2013, Plaintiff McDowell was issued a US passport for which she applied by submitting all passport documentation to the Carroll County Courthouse, located in Carrollton, Georgia.

56.     As part of the application process, Plaintiff McDowell provided the personal information necessary to process her passport application through Defendants, including her social security number, residential address, telephone number, date of birth, and other personal information, to the US Department of State through CGI's software.

57.     In providing this highly important personal data to Defendants, Plaintiff McDowell had a reasonable expectation that the US government, and therefore any employee and/or contractors and their

employees, would have in place reasonable and appropriate security measures to insure that her personal data was secure.

58.     In or about August 2013, Plaintiff was notified by CreditScore.com that there had been an unauthorized account opened and retail transaction conducted using her social security number.  She was advised that on July 21, 2013, a T-Mobile account had been opened under her social security number and that the name on the account was a "Timothy Phomason" located on Bernel Road, San Jose, California.  Plaintiff McDowell was also advised that a retail purchase by phone was made in Texas in the amount of $2,300.  Plaintiff notified T-Mobile's Fraud Department, the Federal Trade Commission, and the local police department of the fraudulent transactions.

59.     On August 16, 2013, Plaintiff McDowell received a letter from T-Mobile informing her that an investigation by T-Mobile determined that the account at issue was activated without her knowledge or authorization.  Also on August 16, 2013, Plaintiff McDowell filed an Incident Report with the Carroll County Sheriff's Office for Identity Theft/Fraud to Create/Use/Possess.

60.     On June 3, 2015, Plaintiff McDowell was identified as a victim of fraud by the U.S. Department of Justice and learned through the U.S. Department of Justice's investigation that someone had fraudulently obtained Plaintiff's PII through Defendants' computer operating systems and that the T-Mobile account and retail purchase was achieved with Plaintiff's PII stolen by Defendants' employees.  This is the first time she learned that the information used in the fraudulent transactions was taken from her passport application.

61.     Recently, on February 2, 2015, Plaintiff McDowell was notified by CreditScore.com that "Hard Inquiry" was made by Sprint Nextel located in Colorado.  Her personal information is still at risk and she will have to monitor her credit and her family's credit indefinitely.

62.     As a result of this fraud through Defendants' employees, Plaintiff McDowell has spent countless hours dealing with the ramifications of this fraud.  Even though she has been a long time member of CreditScore.com, she also in now a member of LifeLock for further credit monitoring.  She has spent time filing police reports and contacting the Federal Trade Commission.  Plaintiff McDowell has also filed an affidavit with the local sheriff and gave permission to the FBI to enter her personal data into the FBI Identity Theft File.  She has placed fraud alerts on her credit report and had to dispute the fraudulent charges with the credit reporting agency and company.  Plaintiff McDowell also has placed fraud alerts with her banking and credit card companies and placed two-step verifications on all of her accounts.

63.     Further, because Defendants permitted fraudsters' access to her account information through lax security controls, in violation of their obligations to secure private and sensitive data, Plaintiff McDowell is at a heightened risk of further identity theft requiring her to pay indefinitely for on-going credit monitoring.

## CLASS ALLEGATIONS

64.     Plaintiff brings this action on her own behalf, and on behalf of the following proposed Class, pursuant to Federal Rules of Civil Procedure, Rule  23(a), (b)(2), (b)(3), and (c)(4).  Specifically, the Class is defined as follows:

### Data Breach Victim Class

All consumers in the United States whose data was provided to Defendants for the purpose of obtaining a US passport and, while that data was being held by Defendants, was stolen and utilized for fraudulent purposes by unauthorized persons.

(This class may proceed as a national class or be divided into sub-classes for Plaintiff and proposed Class members of individual states.)

65.     Excluded from the proposed Class are:

    a.      Defendants and any entities in which Defendants have a controlling interest;

    b.      any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

    c.      all current employees of Defendants;

    d.      the Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case;

    e.      any attorneys representing Plaintiffs or the Class; and

    f.      all governmental entities.

66.     Plaintiff reserves the right to modify, change, or expand the proposed Class definition.

67.     <u>Numerosity</u> – Fed. R. Civ. P. 23(a)(1).  The members of the Class is so numerous that joinder of all members would be impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process.  Plaintiff believes, and on that basis alleges, that thousands of fraudulent commercial lines of credit were obtained through customers' stolen identities and potentially millions of Defendants' customers' data have been accessed.

68.     <u>Existence and Predominance of Common Questions of Fact and Law</u> – Fed. R. Civ. P. 23(a)(2) and (b)(3).  Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

    a.      whether Defendants failed to reasonably vet, hire, and monitor employees for its passport process services;

b.      whether Defendants failed to reasonably securely store and protect customer data provided to them through the passport application process;

c.      whether Defendants' computer operating systems were systematically used to steal PII of Class members for fraudulent purposes; whether Defendants failed to reasonably prevent fraudulent uses of Plaintiff's and the Class members' PII; whether Defendants' customers' private data was breached;

d.      whether Defendants failed to notify customers as to fraudulent stealing of their PII;

e.      whether Defendants' facilitation of fraud is common to all or some of the Class members;

f.      whether Defendants' conduct violated the causes of action herein alleged;

g.      whether, as a result of Defendants' conduct in this case, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or property and/or value;  and

h.      whether Plaintiff and Class members are entitled to monetary damages and/or other remedies, and, if so, the nature of any such relief.

69.      Typicality – Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class she seeks to represent.  Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all proposed Class members.  The District of Columbia's law is the governing law as Defendants' contract to process US passports on behalf of the US government arose from this district.

70.     <u>Adequacy of Representation</u> – Fed. R. Civ. P. 23(a)(4), 23(g)(1).  Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

71.     <u>Superiority of Class Action</u> – Fed. R. Civ. P. 23(b)(3).  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' customer database and records of complaints.

72.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

73.     This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

        a.     Without class certification and determination of declaratory, injunctive, statutory

and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

      i.     Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

      ii.     Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

      b.     The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

      c.     Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

      i.     the interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

      ii.     the extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

      iii.     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      iv.     the difficulties likely to be encountered in the management of a class action.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT**
**(D.C. Code § 28-3901, *et seq*)**

74.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

75.     The District of Columbia's Consumer Protection Act broadly prohibits unfair or unconscionable acts and representations that services have certain characteristics that they do not have, and representations "that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  D.C. Code § 28-3094.

76.     Defendants have engaged in unfair and unconscionable business acts and have made misrepresentations by the conduct described above, and by knowingly or carelessly failing to secure data, and facilitating fraud, thereby increasing its revenues.   Defendants, as the contractor for the US Department of State for passport processing, was responsible for conducting background checks on federal applicants and engaging in supervision and oversight consistent with the sensitivity of the information such employees were able to access.  Defendants' employees were granted access to Defendants' systems containing Plaintiff's and Class members' PII.  Further, Defendants should have disclosed this information to affected customers because they were in a superior position to know the true facts related to the extent of the fraud being committed by their own employees and without the adequate protection of their own computer operating systems.  Additionally, Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to Defendants' facilitation of such fraud.

77.     Defendants owed Plaintiff and Class members a duty to take reasonable steps to maintain and protect against any dangers to Plaintiff and Class members' PII presented by theft and/or cyber attackers.  This duty included, among other things, rigorous background checks for all employees;

maintaining and testing Defendants' cyber security systems; supervising and monitoring employees; taking other reasonable security measures to protect and adequately secure the PII of Plaintiff and the Class members from unauthorized access, and taking reasonable steps to ensure that hackers and thieves did not compromise Defendants' customers personal data.

78.     Defendants owed a duty of care to Plaintiff and Class members because they were foreseeable and probably victims of any inadequate data security practices.  It was foreseeable that if Defendants did not take reasonable security measures –including protecting passport applicants' PII—the PII of Plaintiff and Class members would be stolen or compromised.  Defendants knew or should have known that US Department of State data was an attractive target for theft and cyber attackers, particularly in light of the fact that a portion of Defendants' business is cyber security.

79.     The theft of PII that took place by Defendants' own employees constitutes a cyber and/or data security issue that triggered Defendants' duty to disclose its cyber and/or data security and employees' theft of PII to affected consumers.

80.     These acts and practices have deceived Plaintiff, and are likely to deceive the public, in terms of how secure their data is under Defendants' care.  In failing to notify Plaintiff and the Class members as to the theft and subsequent fraudulent use of their PII, Defendants breached their duty to disclose these facts, violated the D.C. Consumer Protection Act, and caused injuries to Plaintiff and the Class members.  Defendants' failure to notify affected customers as to the fraudulent theft of passport customers' PII pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

81.     The application of this District of Columbia statute to customers outside the District of Columbia is proper because Defendants' contract with the federal government occurred in this District.

82.     The injuries suffered by Plaintiff and the Class members are greatly outweighed by any

potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and

the Class members could have reasonably avoided.  Furthermore, to the extent Defendants have

discretion in choosing and implementing security measures and providing notice of fraudulent conduct,

they have not done so reasonably and in good faith.

83.     Defendants' acts and practices are unlawful because they violate D.C. Code § 28-3904,

and other additional federal and District of Columbia statutes and regulations.

84.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by

Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of

such practices, and all other relief allowed under the District of Columbia Consumer Protection Act,

section 28-3909.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE DISTRICT OF COLUMBIA'S
## NOTIFICATION OF SECURITY BREACH ACT
## (D.C. Code § 28-3852)

85.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph

as though fully set forth at length herein.

86.     To ensure that personal information about District of Columbia residents is protected, the

District of Columbia's legislature enacted D.C. Code section 28-3851, *et seq*, which requires that any

"person or entity who maintains, handles, or otherwise possesses computerized or other electronic data

that includes personal information that the person or entity does not own shall notify the owner or

licensee of the information of any breach of the security of the system in the most expedient time

possible following discovery."  D.C. Code § 28-3852.

87.     By failing to promptly notify all affected US passport customers that fraudsters had

stolen and used Plaintiff's and Class members' PII, Defendants violated D.C. Code § 28-3852..

24

88.     Accordingly, Plaintiff requests that the Court enter an injunction requiring Defendants to implement and maintain reasonable security measures and disclose to affected customers the date, data, and circumstances of any data that was accessed and/or utilized by unauthorized persons.

89.     Further, Plaintiffs request that the Court require Defendants to identify and notify all members of the Class within 24 hours of Defendants discovering that their personal information has been compromised.

## THIRD CAUSE OF ACTION
### NEGLIGENCE

90.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

91.     Defendants required Plaintiff and Class members to submit sensitive personal information in order to obtain a US passport.  As such, Defendant was actively engaged in the business of collecting, storing, and maintaining such data.

92.     Plaintiff alleges that Defendants assumed a duty of care to use reasonable means to secure and safeguard this personal information, to prevent use of that information by employees, third party fraudsters, and cybercriminals, and to safeguard such information from being stolen.  Included in Defendants' duty was a responsibility to implement a process by which it could detect a breach of its security systems and any fraudulent activity in a reasonably expeditious period of time.

93.     Defendants breached their duty of care by failing to fulfill their legal duty to protect their customers' sensitive personal information by allowing their own employees to steal thousands of class members PII and use Plaintiff's and Class members' personal data as maintained by Defendants.

94.     Given the risks associated with data breaches and identity theft, Defendants also assumed a duty of care to promptly and fully notify and inform its customers should their personal information be compromised.

95.     By failing to implement the proper security measures to ensure that Plaintiff's and Class members' personal data was safeguarded from employees, fraudsters, and cybercriminals, Defendants breached their duty of care.

96.     As a result of Defendants' breach, Plaintiff and Class members have suffered harm, as they have been exposed to identity theft and resulting financial harm, and seek relief as prayed for below.

## FOURTH CAUSE OF ACTION
### Breach of Contract, Including Third-Party Beneficiary Contracts

Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97.     Plaintiff and the Class members, and each of them, entered into a written contract, an oral contract, and/or an implied-in-law contract for consideration with respect to Defendants, and/or the US government to provide passport services including the protection of Plaintiff's and the Class members' PII.

98.     Pursuant to such written, oral, and/or implied in law agreements, Defendants agreed to provide safe-guarded services.  Defendants, and each of them, breached their contractual duties by encouraging, allowing, or employing processes and practices that resulted in the theft of Plaintiff's and the Class members' PII and in the interference with Plaintiff's and the Class members' rights to properly control the disposition of their PII.

99.     To the extent that Plaintiff and/or any Class members did not personally and directly enter into written, oral, and implied-in-fact contracts with the Defendants, such Class members were third-party beneficiaries of the contract between the US government and Defendants, whereby Defendants, by and through Defendants' agents, agreed to properly receive, handle, store, and otherwise utilize the PII of Plaintiff and the Class members.  It was also an implied term of the contract that Defendants would act reasonably and employ reasonable safeguards at all times with respect to handling the PII of Plaintiff and the Class members.  Plaintiff and the Class were intended third party beneficiaries of this contract in that the provision of passport services were the subject of the contract.

100.    As a result of the matters complained of, Plaintiff and the Class members have suffered harm, as they have been exposed to identity theft and resulting financial harm, and seek relief as prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.  appoint Plaintiff as the representatives of the Class and her counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, equitable, punitive, and consequential damages and restitution to which Plaintiff and the Class members are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to implement stricter cyber and/or data security measures that will adequately safeguard customers' most sensitive personal data moving forward;

F.  award reasonable attorneys' fees, costs and expenses pursuant to relevant statutes; and

G.  grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all issues so triable.

Dated:  July 20, 2015                              Respectfully submitted,

**ABBOTT LAW GROUP, P.A**.


By: /s/ *Steven W. Teppler*
_____
       Steven W. Teppler (DC Bar No. 445259)
       *E-mail: steppler@abbottlawpa.com*
       **ABBOTT LAW GROUP, P.A.**
       2929 Plummer Cove Road
       Jacksonville, FL 32223
       Telephone: (904) 292-1111
       Facsimile: (904) 292-1220

       Joel R. Rhine (NC State Bar No. 16028)*
       *E-Mail: jrr@rhinelawfirm.com*
       **RHINE LAW FIRM, P.C.**
       1612 Military Cutoff Road, Ste. 300
       Wilmington, NC 28403
       Telephone: (910) 777-7651
       Facsimile: (910) 772-9062

       Richard D. McCune (CA State Bar. No. 132124)
       *E-mail: rdm@mccunewright.com*
       David C. Wright (CA State Bar No. 177468)
       *E-Mail: dcw@mccunewright.com*
       Michele M. Vercoski (CA State Bar No. 244010)
       *E-mail: mmv@mccunewright.com*
       **MCCUNEWRIGHT LLP**
       2068 Orange Tree Lane, Suite 216
       Redlands, California 92374
       Telephone: (909) 557-1250
       Fax: (909) 557-1275

       Michael W. Sobol (State Bar No. 194857)
       *E-mail: msobol@lchb.com*
       Roger Heller (State Bar No. 215348)
       *E-mail: rheller@lchb.com*
       **LIEFF, CABRASER, HEIMANN &**
       **BERNSTEIN, LLP**
       275 Battery Street, 29th Floor
       San Francisco, CA 94111-3339
       Telephone: (415) 956-1000
       Fax: (415) 956-1008

       John A. Yanchunis (FL State Bar No. 324681)*
       *E-mail: JYanchunis@ForThePeople.com*

Rachel Soffin (FL State Bar No. 0018054)*
*E-mail: RSoffin@ForThePeople.com*
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, Florida, 33602
Telephone: (813) 223-5505
Fax: (813) 222-4738

*Pro Hac Vice* Applications to be submitted

*Attorneys for Plaintiff and Putative Class members*